UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| SILVERWING AT SANDPOINT, LLC, an Idaho limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>BONNER COUNTY, an Idaho municipal corporation,<br><br>        Defendant. | Case No. 2:12-CV-00287-EJL-LMB<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

On August 14, 2013, United States Magistrate Larry M. Boyle issued a Report and Recommendation ("Report"), recommending that Defendant's Motion for Judgement on the Pleadings be granted in part and denied in part. Any party may challenge the Magistrate Judge's proposed recommendation by filing written objections within fourteen days after being served with a copy of the Report. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate. *Id.*; *see also* Fed. R. Civ. P. 72(b).

**ORDER ON REPORT AND RECOMMENDATION - 1**

Plaintiff filed objections to the Report arguing it erred in dismissing the Equal Protection claim and, alternatively, leave to amend should be granted as to the Equal Protection claim. (Dkt. 57.) Defendant also filed objections to the Report asserting the Federal Aviation Administration (FAA) should be joined in this action, the Court should take judicial notice of certain documents, and that the inverse condemnation and breach claims should be dismissed. (Dkt. 56.)[1] The Court has considered the parties' contentions and conducted a *de novo* review of the record and, upon that basis, finds as follows.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an

---

[1] Defendant also filed a Motion for Reconsideration as to the Request for Judicial Notice. (Dkt. 58.) The Court has reviewed the Motion and will rule upon the same in this Order.

**ORDER ON REPORT AND RECOMMENDATION - 2**

> objection or request for review by the defendant, the district court was not
> required to engage in any more formal review of the plea proceeding."); *see
> also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for
> Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the

extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ.

P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days

of service of the Report and Recommendation). "When no timely objection is filed, the Court

need only satisfy itself that there is no clear error on the face of the record in order to accept

the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v.

United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

In this case, both parties have filed objections and, therefore, the Court has conducted

a *de novo* review of those portions of the Report. The Court has also reviewed the entire

Report as well as the record in this matter for clear error on the face of the record and finds

as follows.

### DISCUSSION

The Plaintiff's Motion here is one for a judgment on the pleadings made pursuant to

Federal Rule of Civil Procedure 12(c). A party may move for a judgment on the pleadings

at any point after the pleadings close. Fed. R. Civ. P. 12(c) ("After the pleadings are closed

but within such time as not to delay the trial, any party may move for judgment on the

pleadings."). The standard for deciding a motion under Rule 12(c) is "functionally identical"

to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6) and the

**ORDER ON REPORT AND RECOMMENDATION - 3**

same standard of review applies to both. *Cafasso, U.S. ex rel. v. general Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011) (citing cases).

A Rule 12(b)(6) motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted). Although "we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted). "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**ORDER ON REPORT AND RECOMMENDATION - 4**

**1.      Plaintiff's Objections**

**A.      Dismissal of Count 3: Equal Protection Clause Claim**

The Report granted the Motion as to Count 3 concluding the Plaintiff did not state an Equal Protection claim because it was not a "class of one." (Dkt. 53 at 16-18.) In its objections, Plaintiff maintains it plainly stated a claim for a "class of one" Equal Protection violation and, therefore, the Report erred in dismissing the claim. (Dkt. 57.)

Plaintiff does not object to the law relied upon in the Report setting the requirements for establishing a "class of one" Equal Protection claim in the land use context as requiring the Plaintiff to allege that Defendants (1) intentionally, (2) treated [it] differently than other similarly situated property owners, and (3) without a rational basis. (Dkt. 53 at 17 and Dkt. 57 at 5) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)); *see also Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). Instead, Plaintiff's objection is that the Report erred in applying those requirements to the facts here and maintains the allegations in the Complaint are sufficient to state a plausible Equal Protection claim as a "class of one." (Dkt. 57 at 6-7.) The Report concluded that Plaintiff had not alleged sufficient facts to the claim because there is a legitimate reason for the difference in treatment between a residential community and a commercial enterprises. (Dkt. 53 at 18.) This Court has conducted a *de novo* review of this issue and finds as follows.

First, the Complaint alleges facts which, if true, state a plausible claim that the Defendant intentionally treated Plaintiff differently. Paragraph 79 of the Complaint alleges the County "committed to the FAA that it will specifically seek to extinguish SilverWing's

**ORDER ON REPORT AND RECOMMENDATION - 5**

Easement and TTF access rights." (Dkt. 1-2 at ¶ 79.)

Second, the Plaintiff has alleged facts in the Complaint sufficient, at least on this Motion, to show it is "similarly situated" to other property owners. Plaintiff argues it's interests are like those of the other private property owners on the west side of the airport who have easements providing access to the airport's runway and have been told that their easements violate the Defendant's grant agreement with the Federal Aviation Administration ("FAA"). (Dkt. 57 at 6.) The facts alleged in the Complaint about the other private property owners are found in Paragraphs 77-81 which state:

> There are a "number of private property owners along the west side of the airport [that] have valid and existing easements with the County allowing access from their private property to the Airport's runway." (Dkt. 1-2 at ¶ 77.)

> The "FAA informed the County that the County's numerous easements with the west side property owners violate the County's Grant Assurances and, to that end, render the Airport in 'non-compliance' status for the purpose of AIP funding." (Dkt. 1-2 at ¶ 78.)

> The County "committed to the FAA that it will specifically seek to extinguish SilverWing's Easement and TTF access rights." (Dkt. 1-2 at ¶ 79.)

> The County "has not committed to extinguish the rights of all other west side property owners with valid easement rights." (Dkt. 1-2 at ¶ 80.)

> "The County has treated SilverWing differently than similarly situated landowners seeking to develop property within the County." (Dkt. 1-2 at ¶ 81.)

(Dkt. 1-2 at ¶¶ 77-81.) Taking the allegations in the Complaint as true, the allegations as to the other property owners is that they are on the same side of the airport as the Plaintiff, hold easements to access the airport, and the County has not sought to extinguish their easements in the same way it has with Plaintiff's easement. For purposes of this Motion, the Court finds

**ORDER ON REPORT AND RECOMMENDATION - 6**

the allegations state a plausible claim that Plaintiff is similarly situated to the other property

owners for purposes of maintaining a "class of one" Equal Protection claim.

Finally, Plaintiff has alleged facts plausibly showing there is no rational basis for the

difference in treatment. Plaintiff points to Paragraphs 81 and 82 arguing it has been

discriminated against by the Defendant who treated the other property owners of easements

on the west side of the airport more favorably than it. (Dkt. 57 at 6-7); *see also* (Dkt. 1-2 at

¶¶ 81-82.) Defendant argued in its original briefing on the Motion that "residential TTF

projects are subject to a completely separate and distinct set of regulations from those

applicable to commercial TTF properties." (Dkt. 16 at 19.)[2] Plaintiff takes issue with that

contention by arguing there is no relationship between the regulations and the differential

treatment. (Dkt. 57 at 7.) The Report agreed with the Defendant and, on that basis, granted

the Motion as to the Equal Protection claim. (Dkt. 53.)

This Court's own review of the allegations in pleadings reveals that the Plaintiff's

TTF project is for a residential community development. There are no allegations made in

the Complaint as to whether the other property owners on the west-side of the airport are

residential or commercial TTF properties. The fact that there are differing regulations for

commercial versus residential TTF properties may be a viable defense if in fact the other

property owners are commercial developments. The Motion before the Court at this stage,

however, only tests the legal sufficiency of the Plaintiff's claims taking all allegations of

---

[2]TTF is an abbreviation for "Through The Fence" agreements. As used in this case, TTF is an agreement between a land owner and the Defendant providing for an easement which would allow a land owner access to the airport from their property.

**ORDER ON REPORT AND RECOMMENDATION - 7**

material fact in the Complaint as true and construed in the light most favorable to the nonmoving party. Applying that standard here, the Court finds that the Plaintiff has stated a plausible Equal Protection claim for purposes of this Motion. Accordingly, this Court differs with the Report's conclusion and will deny the Motion as to this claim. Whether this claim survives a later motion is uncertain.

**2.       Defendant's Objections**

**A.       Joinder of FAA**

Defendant objects to the Report's conclusion that joinder of the FAA is not required in this case. (Dkt. 56 at 1.) Plaintiff has filed an opposition to the objection arguing the Report correctly determined that the FAA is not a necessary party. (Dkt. 67.) Federal Rule of Civil Procedure 19(a) governs joinder of non-parties and provides:

> (a) Persons Required to Be Joined if Feasible.
>> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>>> (I) as a practical matter impair or impede the person's ability to protect the interest; or
>>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Under this Rule, a party must be joined as a necessary party in two circumstances: 1) when complete relief is not possible without the absent party's presence

or 2) when the absent party claims a legally protected interest in the action.

The Report looked to Rule 19(a) and concluded that neither of the two prongs had been satisfied so as to require joinder of the FAA. (Dkt. 53 at 10.) Defendant argues the Report erred in finding the FAA is not a necessary party that should have been joined for three reasons: 1) complete relief is not possible without joining the FAA, 2) FAA approval is necessary for the County to abstain from upgrading to a B-II facility, and 3) Defendant has established it is a mere agent of the FAA. (Dkt. 56 at 1-3.) In sum, the Defendant argues it has established the FAA's complete occupation of the field of airport development standards makes it the party liable for Plaintiff's alleged damages. The Court has conducted a *de novo* review of the record on this issue and, having done so, is in agreement with the Report's conclusions at this stage in the litigation.

In addressing a Rule 19 motion to dismiss claims for failure to join required parties, "the proper approach is first to decide whether the [absent party is a required party] who should normally be joined under the standards of Rule 19(a)." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Comm. v. California*, 547 F.3d 962, 969 (9th Cir. 2008) (citations and quotations omitted). If the absent party is a required party, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.*

Absent parties are "required" parties to if they meet the precepts of Rule 19(a)(1)(B) in that they claim an interest relating to the subject of the action and are so situated that disposing of the action in their absence may: (I) as a practical matter impair or impede their

**ORDER ON REPORT AND RECOMMENDATION - 9**

ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1)(B). Thus, the absent parties must possess an interest in the pending litigation that is "legally protected." *Cachil*, 547 F.3d at 970 (citation omitted). In making this determination, the Ninth Circuit has developed few "categorical rules":

> At one end of the spectrum, we have held that the interest at stake need not be "property in the sense of the due process clause." At the other end of the spectrum, we have recognized that the "interest must be more than a financial stake, and more than speculation about a future event." Within the wide boundaries set by these general principles, we have emphasized the "practical" and "fact-specific" nature of the inquiry. Accordingly, an interest that "arises from terms in bargained contracts" may be protected, but we have required that such an interest be "substantial." An interest in a fixed fund or limited resource that the court is asked to allocate may also be protected. At the same time, an absent party has no legally protected interest at stake in a suit merely to enforce compliance with administrative procedures.

*Cachil*, 547 F.3d at 970-71 (citations omitted).

Here, the Plaintiff's claims seek relief for actions taken by the County, not the FAA. (Dkt. 1.) Although the FAA is involved in approving and ensuring airports comply with applicable regulations, the claims made here by Plaintiff are as to the County's conduct and the impact of that conduct on the Plaintiff's interests. The parties' arguments regarding the impact of the FAA's enforcement of regulations and/or any contractual arguments between the FAA and the County are not decided on this Motion. At this stage, the Court agrees with the Report that the FAA is not a "required" party to this action.

**ORDER ON REPORT AND RECOMMENDATION - 10**

**B.    Dismissal of Count 1: Breach of Implied Covenant of Good Faith and Fair Dealing**

The Report denied the Defendant's Motion as to Count 1 concluding there is a "question of fact whether or not the County's attempts of terminating Silverwing's TTF access breached the covenant of good faith and fair dealing." (Dkt. 53 at 12.) Defendant objects to the Report's determination that the breach of the implied covenant of good faith and fair dealing claim should go forward arguing 1) the FAA is a necessary party that should be joined as its regulations govern airport design and 2) neither the TTF Agreement or Easement still exist upon which Plaintiff can claim a basis for the alleged breach of the covenant of good faith and fair dealing. (Dkt. 56 at 5.)

The Court has already addressed the first objection above, concluding that the FAA is not a required party to this action. As to the second contention, the Court has reviewed the record *de novo* and agrees with the Report. Defendant argues the Plaintiff was not in compliance with the TTF Agreement and FAA regulations such that there was no existing contract upon which the implied covenant claim can be raised. (Dkt. 56 at 6.) On this point, the Court finds the question whether or not a contract exists is in dispute. That question, however, is not one to be decide on this Motion at this early stage in the litigation. The standard on this Motion looks at the sufficiency of the pleadings. At this stage, the Court concludes that the Complaint has stated a plausible claim for breach of the implied covenant of good faith and fair dealing. (Dkt. 1.) The Complaint alleges:

> The TTF Agreement and Easement contain an implied covenant of good faith and fair dealing.

**ORDER ON REPORT AND RECOMMENDATION - 11**

The County breached the implied covenant of good faith and fair dealing by explicitly committing to, and actually working toward, extinguishing the perpetual nature of SilverWing's TTF Agreement and Easement.

The County did not perform its respective obligations under the TTF Agreement and Easement in good faith and breached the covenant of good faith and fair dealing by violating, nullifying and/or significantly impairing the benefit of the TTF Agreement and Easement it promised to SilverWing.

(Dkt. 1 at ¶¶ 59, 62, 63.) These allegations, if true, state a plausible claim for breach of the implied covenant of good faith and fair dealing. The fact that the Defendant may have a viable defense arguing the Plaintiff cannot show the existence of any contract does not, under the standard applicable here, warrant granting the instant Motion.

Further, the Court has reviewed the Defendant's request for judicial notice and Motion for Reconsideration related thereto. (Dkt. 16-2, 58.) Defendant seeks to have the Court take judicial notice, pursuant to Federal Rule of Evidence 201, of the existence and content of: 1) the November 12, 2003 Sandpoint Airport Layout Plan (ALP), 2) the TTF Airport Access Agreement between the County and Plaintiff, and 3) the FAA DRAFT Compliance Guidance Letter 2012-X-FAA Review of Existing and Proposed Residential TTF Access Agreements. (Dkt. 16-2.) The Report declined to judicially recognize the documents on the grounds that Plaintiff disputed the accuracy of the 2003 ALP and it would be premature to do so at this stage of the litigation. (Dkt. 53 at 9.) Defendant has sought reconsideration of the Report's conclusion. (Dkt. 58.)

This Court, having reviewed this question *de novo*, notes that Plaintiff opposes judicial notice of only the November 2003 ALP arguing that document is subject to

**ORDER ON REPORT AND RECOMMENDATION - 12**

reasonable dispute. (Dkt. 22 at 2.) Defendant counters that the documents are all matters of public record, not subject to reasonable dispute, generally known within this jurisdiction, and their accuracy can be readily determined and not reasonably questioned. (Dkt. 26.)

The Report recognized the proper standard for judicial notice under Federal Rule of Evidence 201. (Dkt. 53 at 8.) This Court does not find error in the Report's decision declining to judicially recognize the documents under Rule 201. However, given the fact that Plaintiff does not oppose judicial notice of two of the documents, this Court finds it appropriate to grant the request as to those two documents solely for purposes of this Motion. As to the document that is in dispute, the Court has considered the same and finds the document is, at least at this time, subject to a reasonable dispute and the Court denies the request for judicial notice of the November 2003 ALP. *See* Fed. R. Evid. 201(b). Regardless, even if all of the documents are considered, the Court finds the documents do not change the outcome of this Motion. The documents may very well prove to be dispositive of the claim in a later more substantive motion. Upon the standard applicable to this Motion, however, the documents do not change the Court's ruling.

### C.    Dismissal of Count 2: Inverse Condemnation

Count Two of the Complaint raises a claim of inverse condemnation, or regulatory taking, arguing the Defendant's actions in regards to the applicable regulations are resulting in, or will result in, actual and substantial interference with Plaintiff's reasonable, investment backed expectations and has deprived Plaintiff of economically viable uses of its property. (Dkt. 1 at ¶ 73, 74.) "[U]nder *Penn Central Transportation Co. v. City of New York*, 438 U.S.

104 (1978), a regulatory taking may occur—and just compensation is required—when 'regulatory actions [occur] that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner' with the inquiry 'focus[ing] directly upon the severity of the burden that government imposes upon private property rights.'" *MHC Financing Ltd. Partnership v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). "*Penn Central* identified 'several factors that have particular significance' in determining whether a regulation constitutes a taking." *Id.* (citation omitted). These factors include: 1) "the regulation's economic impact on the claimant," 2) "the extent to which the regulation interferes with distinct investment-backed expectations," and 3) "the character of the government action." *Id.* "Primary among those factors are [t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Id.* (citation omitted).

Here, the Report denied the Motion finding the *Penn Central* factors favor allowing the Plaintiff's regulatory takings claim to proceed. (Dkt. 53 at 16.) Defendant objects to the Report's finding arguing the second factor - the nonspeculative nature of Plaintiff's distinct, investment backed expectations - has not been shown here. (Dkt. 56 at 4.) The Defendant maintains that Plaintiff has failed to alleged a claim as to the extent to which the regulation has interfered with distinct investment backed expectations. (Dkt. 56 at 4) (citing *Lingle supra.*)

**ORDER ON REPORT AND RECOMMENDATION - 14**

As to the second factor, to which the Defendant's objections cite error, the Report concluded that Plaintiff purchased the property with the expectation to develop it into a profitable fly-in residential community which, at the time of the purchase, the zoning laws, associated rights, and governmental agencies allowed for. (DKt. 53 at 14-15.) The Report concluded that the County's change in position concerning the development may permanently foreclose the Plaintiff's ability to develop the property as it intended. Defendant counters that the Plaintiff had no distinct investment backed expectations just because it bought the property near the airport and placed its taxiway on the airport. (Dkt. 56 at 4.) Defendant maintains the Plaintiff's property purchase was always subject to associated regulatory constraints which existed at the time of purchase.

This Court has conducted a *de novo* review of this issue and finds the Report has properly addressed the same. The Complaint alleges an easement existed at the time Plaintiff purchased the property allowing it access from its property to the Airport's runway. (Dkt. 1 at ¶ 6.) The Complaint goes on to allege facts that the Defendant knew of and apparently supported the Plaintiff's proposed development of the property while, at the same time, Defendants did not disclose any plans for major airport developments that would impact the Plaintiff's planned development. (Dkt. 1 at ¶ 7-15.) The Complaint further alleges the Plaintiff built the west side taxiway in reliance upon the County's approval of its project and also entered into a TTF Agreement with the County to secure its right to access the Airport. (Dkt. 1 at 16-24.) In particular to Count Two, the Complaint alleges Plaintiff has invested "millions of dollars" in the planned development a critical component of which is the ability

**ORDER ON REPORT AND RECOMMENDATION - 15**

of owners/prospective buyers of the property to access the Airport's runway with their aircrafts from the development which, Plaintiff claims, it has a clear and legal right of access. (Dkt. 1 at ¶ 69, 70.) The allegations in the Complaint then go on to claim the County changed its position concerning its approval of Plaintiff's development which, Plaintiff argues, has significantly harmed its economic interests in its property. (Dkt. 1 at ¶ 52-57.) The Court finds these allegations show a plausible claim of distinct investment-backed expectations in being able to develop its property with access to the airport. Defendant's objections challenge whether or not Plaintiff ever had the Airport access or property rights it claims to have. (Dkt. 56.) That may prove to be true. At this stage, however, the Court agrees with the Report that Plaintiff has stated a plausible claim for regulatory taking.

## ORDER

Having conducted a *de novo* review of the Report and Recommendation, this Court finds that Magistrate Judge Boyle's Report and Recommendation is well founded in law and consistent with this Court's own view of the evidence in the record except as stated herein. Acting on the recommendation of Magistrate Judge Boyle, and this Court being fully advised in the premises, **IT IS HEREBY ORDERED** that the Report and Recommendation entered on August 14, 2013 (Dkt. 53), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED EXCEPT AS STATED HEREIN**.

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for a Judgement on the Pleadings (Dkt. 16) is **DENIED**.

**ORDER ON REPORT AND RECOMMENDATION - 16**

IT IS FURTHER ORDERED that Defendant's Request for Judicial Notice (Dkt. 16-2) and Motion for Reconsideration (Dkt. 58) are **GRANTED IN PART AND DENIED IN PART**.

DATED:  **September 18, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER ON REPORT AND RECOMMENDATION - 17**